IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NICK BERNARDO T/A NET GAIN MARKETING | : : : | CIVIL ACTION |
| v. | : : | |
| CONTINENTAL SERVICE GROUP, INC., A NEW YORK CORPORATION T/A CONSERVE | : : : | NO. 10-1388 |

**MEMORANDUM**

Padova, J.                                                                                                                         June 30, 2010

Plaintiff Nick Bernardo t/a Net Gain Marketing ("Net Gain") has filed a breach of contract action against Defendant Continental Service Group, Inc. ("ConServe"). Essentially, Net Gain alleges that ConServe breached a contract by discontinuing payment of "bonus" fees under the contract. ConServe has filed a Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). For the following reasons, we deny the Motion in its entirety.

**I.    BACKGROUND**

The Complaint alleges that on June 9, 2004, Net Gain and ConServe entered into a written contract ("the Agreement") pursuant to which Net Gain would assist ConServe in preparing a bid for collections work with the U.S. Department of Education ("ED"). (Compl. ¶¶ 6, 8.) The contours of the work on which ConServe was bidding was set forth in a task order (the "2004 Task Order"). (See id. ¶ 8.) As a result of the services that Net Gain provided pursuant to the Agreement, ConServe was the prevailing bidder on the 2004 Task Order. (Id. ¶ 9.)

The Agreement provides, among other things, that Net Gain shall be paid a "Bonus" of 2.5% of the actual receipts arising from ConServe's work pursuant to the 2004 Task Order. (Id. ¶ 10.)

The Bonus is "due and payable within 30 days of the completion of each calendar month, until the task order is subsequently re-bid and accounts placed under the current task order are recalled." (Id.) Despite the time frame established in the "Bonus" provision, a "Term" provision in the Agreement further states that the "arrangement shall terminate upon the later of the end of the task order or thirty (30) months."[1] (Agreement at 1.)

The work performed by ConServe for ED as provided in the 2004 Task Order is done pursuant to terms set forth in a "Statement of Work." (Compl. ¶ 11.) In 2008, the 2004 Task Order was re-bid and ConServe received a new task order from ED (the "2008 Task Order"). (Id. ¶ 12.) The Complaint alleges that the Statement of Work allows ConServe to retain accounts that it was servicing under the 2004 Task Order, and ConServe has done so. (Id. ¶ 13.) As a result, according to the Complaint, ConServe continues to collect funds for accounts under the 2004 Task Order and to "enjoy revenue" from those collections. (Id.) Indeed, the Complaint alleges that ConServe can "recognize revenue separately" under the 2004 and 2008 Task Orders. (Id. ¶ 14.)

Nevertheless, on December 17, 2009, ConServe wrote to Net Gain to notify it of the end of the Agreement effective September 30, 2009. (Id. ¶ 16.) Although ConServe, after September 30, 2009, made two final bonus payments to Net Gain from revenue it earned under the 2004 Task Order, it has refused to make any further bonus payments. (Id. ¶¶ 17-18.)

The Complaint contains two Counts. In Count I, Net Gain asserts a breach of contract claim against ConServe based on ConServe's discontinuation of bonus payments under the 2004 Task Order. (Id. ¶ 20.) Net Gain estimates that it is owed bonus payments in excess of $150,000. (Id.

---

[1]Neither the Agreement nor the 2004 Task Order are attached to the Complaint. ConServe has submitted both of these documents to the Court in connection with its Motion to Dismiss. We address the question of whether we can consider these documents below.

2

¶ 21.) In Count II, Net Gain asserts a claim of Accounting, in which it seeks detailed information regarding revenue that ConServe has received from ED under the 2004 Task Order. (Id. ¶ 23.)

In its Motion to Dismiss, ConServe seeks to dismiss both Counts of the Complaint. With respect to Count I (breach of contract), it argues that the 2004 Task Order ended on September 30, 2009, and that pursuant to the Agreement's Term clause, the Agreement and all obligations to make bonus payments under the Agreement terminated on September 30, 2009 as well. (Def.'s Mem. in Supp. of Mot. to Dismiss, at 7.) In support of this argument, ConServe relies heavily on the text of the 2004 Task Order, a copy of which it attaches to its pleadings.[2] With respect to Count II,

---

[2]ConServe initially attached to its Motion to Dismiss a document entitled "Request for Task Order Proposals," which it asserted was the 2004 Task Order. (Ex. B to Mot. to Dismiss.) Net Gain argued in its responsive brief that the "Request for Task Order Proposals" was not only inauthentic, but also was only an initial invitation for bids and not the final 2004 Task Order. Net Gain noted, among other things, that the "Request for Task Order Proposals" identifies as an attachment a "Statement of Work," but that no Statement of Work was attached to it. In response to these arguments, ConServe provided with its Reply Brief a second document, which it now asserts is the "official" 2004 Task Order. (Reply Br. at 1; Ex. D to Reply Br.) It is this document to which we refer when we reference the 2004 Task Order.

According to ConServe, reference to the 2004 Task Order leads to the inescapable conclusion that the Task Order ended no later than September 30, 2009, and that, in turn, the Agreement between it and Net Gain also expired no later than that date. ConServe reasons that the Agreement clearly states that it "shall terminate upon the later of the end of the [2004] Task Order or thirty (30) months." (Agreement at 1.) Meanwhile, the 2004 Task Order, which has an effective date of September 30, 2004, contains a provision concerning the duration of the Task Order and ED's option to extend it, which provides as follows:

> The total duration of the period of performance of this Task Order, including the exercise of any option under this clause, shall not exceed 60 months.
>
> Exercise of an option shall extend the Task Order period of performance as follows:
>
> Option 1   12-months   April 1, 2007 through March 31, 2008
> Option 2   12-months   April 1, 2008 through March 31, 2009
> Option 3   6-months    April 1, 2009 through September 30, 2009

ConServe asserts that dismissal is appropriate because Accounting is not an independent cause of action but, rather, is merely an equitable remedy.

## II. LEGAL STANDARD

In considering a motion to dismiss under Rule 12(b)(6), a district court must "'accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff,'" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)), and must accept all reasonable inferences that can be drawn from the facts alleged in the complaint. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). In order to survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, – U.S. –, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570 (2007)). To be facially plausible, a claim must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

## III. DISCUSSION

As noted above, ConServe moves to dismiss both Counts of the Complaint. For the following reasons, we deny ConServe's Motion in its entirety.

### A. Count I: Breach of Contract

In seeking dismissal of the breach of contract claim, ConServe argues that under the plain terms of the Agreement, its obligation to make bonus payments ended upon termination of the 2004

---

(Ex. D at 8.) ConServe thus maintains that there were no circumstances under which the 2004 Task Order could end any later than September 30, 2009, and that the Agreement therefore ended no later than that date as well.

Task Order on September 30, 2009. As noted above, ConServe's argument is dependent on the terms of the Agreement and the 2004 Task Order, which Net Gain did not attach to the Complaint. ConServe has therefore attached both documents to its briefing on the Motion to Dismiss. For the following reasons, we conclude that we can consider the Agreement in connection with the Motion to Dismiss, but cannot consider the 2004 Task Order, because of questions regarding its authenticity. Moreover, because ConServe's argument for dismissal of the breach of contract claim is dependent upon consideration of the text of the 2004 Task Order, we deny ConServe's Motion insofar as it seeks dismissal of the contract claim.

In deciding a motion to dismiss, courts generally consider only the allegations that are contained in the complaint, exhibits attached to the complaint, and matters of public record. Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). However, a court may also consider other documents where their content and meaning are central to the plaintiff's complaint. Plater-Zyberk v. Abraham, Civ. A. No. 97-3322, 1998 WL 67545, at *4 (E.D. Pa. Feb. 17, 1998). As the United States Court of Appeals for the Third Circuit has stated, "document[s] integral to or explicitly relied upon in the complaint" may be considered on a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). Without this rule, "a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relies." Pension, 998 F.2d at 1196. Furthermore, the Third Circuit has observed that "the primary problem raised by looking to documents outside the complaint – lack of notice to the plaintiff – is dissipated 'where plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'" Burlington, 114 F.3d at 1426 (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991)). At the same time, a document

should not be considered unless it is "undisputedly authentic." Pension, 998 F.2d at 1196 ( "[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); see also Richardson v. Richardson, Civ. A. No. 07-4510, 2008 WL 2812977, at *2 (E.D. Pa. July 21, 2008) (refusing to consider document supplied by defendant in connection with motion to dismiss, in part because plaintiff had questioned the authenticity and veracity of the document).

In this case, the Agreement is integral to, and explicitly relied upon in, the Complaint, as Count I is a claim for breach of the Agreement. Moreover, Net Gain does not dispute the authenticity of the Agreement. Accordingly, we can consider the Agreement and all of its terms in connection with the Motion to Dismiss.

The 2004 Task Order, however, is different. The 2004 Task Order, like the Agreement, is integral to, and explicitly relied upon in, the Complaint. We reach this conclusion for a number of reasons. First, the 2004 Task Order is specifically mentioned throughout the Complaint. (See Compl. ¶¶ 9-15.) Second, Net Gain's belief that the Agreement has not terminated is derived from its interpretation of the 2004 Task Order, i.e., that the Task Order permits ConServe to retain accounts that have not been recalled. (See Compl. ¶ 13; Sur-Reply at 2.) Third, the Agreement cross-references the 2004 Task Order.

Nevertheless, we cannot consider the 2004 Task Order at this time because Net Gain challenges its authenticity. As Net Gain notes, it not only appears that pages are missing from the 2004 Task Order, but it also appears that certain anticipated modifications to the document are not incorporated into the copy provided. (See Sur-Reply at 2.) Moreover, it is noteworthy that ConServe did not initially produce what it now deems the official version of the 2004 Task Order.

6

(See n.2 supra.) In any event, given that only indisputably authentic documents may be considered in connection with a motion to dismiss, and Net Gain disputes the 2004 Task Order's authenticity, we conclude that we cannot consider the 2004 Task Order at this stage of the proceedings.

Looking only at the Complaint and the Agreement, it is not apparent that Net Gain is not entitled to relief as a matter of law. To the contrary, we conclude that the Complaint plausibly suggests that Net Gain is entitled to relief. Indeed, without undisputed information regarding the contents and termination of the 2004 Task Order, we cannot credit ConServe's argument that the 2004 Task Order ended on September 30, 2009. Therefore, we cannot, in turn, conclude that Net Gain has not stated a claim for breach of the Agreement after September 30, 2009, because the Agreement was no longer operative after that date. Accordingly, at this early stage of the proceedings, we deny ConServe's Motion insofar as it seeks dismissal of the breach of contract claim.

B. Count II: Accounting

Net Gain also asserts a claim for Accounting, in which it seeks an accounting of revenue that ConServe has received under the 2004 Task Order. (Compl. ¶ 23.) ConServe argues in its Motion that this claim must be dismissed, because the law does not recognize a cause of action for "Accounting." However, contrary to Net Gain's assertion, there are potential claims for Accounting under state law. See, e.g., Berger & Montague, P.C. v. Scott & Scott, LLC, 153 F. Supp. 2d 750, 754 (E.D. Pa. 2001) (claim for legal accounting); Binary Semantics Ltd. v. Minitab, Inc., Civ. A. No. 07-1750, 2008 WL 763575, at *13 (E.D. Pa. Mar. 20, 2008) (claim for equitable accounting). Accordingly, we deny ConServe's Motion insofar as it seeks dismissal of the Accounting claim (Count II).

## IV. CONCLUSION

For the foregoing reasons, we deny ConServe's Motion to Dismiss Plaintiff's Complaint in its entirety. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

John R. Padova, J.